Gerald HATCHER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 379S68.

Supreme Court of Indiana.

Sept. 26, 1980.

Joseph Shikany, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Dep. Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged by Information in three counts of Robbery. Ind.Code § 35–42–5–1 (Burns 1979). Count I was for Armed Robbery resulting in bodily injury to the victim, a Class A Felony.

Counts II and III were for armed robberies, Class B Felony. The robberies occurred at a clothing store in the late afternoon of November 12, 1977. Following a trial by jury, the defendant was convicted upon all three counts. He was sentenced to fifty (50) years imprisonment upon Count I, twenty (20) years imprisonment upon Count II, and twenty (20) years imprisonment upon Count III, said sentences to run consecutively.

This direct appeal presents the following issues:

(1) Whether the trial court erred in admitting evidence of statements made by the defendant during police interrogation.

(2) Whether the trial court erred in admitting physical evidence taken from the defendant pursuant to his arrest for disorderly conduct following the aforementioned police interrogation.

(3) Whether the defendant was subject to sentencing upon all three counts.

## ISSUES I & II

Officer Rodgers of the Indianapolis Police Department, arrived at the clothing store at 5:25 p. m. He interviewed store employees, Nooe and Newport and obtained a description of the bandit, a negro male, approximately twenty–two to twenty–five years old, six feet tall, one hundred seventy to one hundred seventy–five pounds, black hair, brown eyes, medium complexion, slender build. Ms. Newport showed him a pair of men's black chucka boots with a fleece lining and said that the bandit had worn that kind of shoes.

Officer Rodgers relayed to police headquarters, by radio, a report of his investigation, including the above related description, the description of the bandit's boots and the belief that the bandit had suffered a gunshot wound.

Deputy Bonnie Schubert, of the Marion County Sheriff's Office, heard Rodgers' radio broadcast while on duty. In the early morning hours of November 14, 1977, she was dispatched to the emergency room of St. Vincent's Hospital, in response to a report of a gunshot wound. There she en-countered the defendant, who had suffered such an injury. The defendant was clothed in a hospital gown and his clothing was in a basket on the table upon which he lay. She began a routine investigation, asking for his name and identification. He gave her a driver's license, his Social Security card and other cards issued in the name of "Willian T. Smith." However, there were discrepancies in the numbers upon the Social Security card and the driver's license, and the defendant's physical appearance did not match his description that appeared on the driver's license. When asked his date of birth, he responded with a date that did not correspond with the date that appeared upon the driver's license.

When first asked how he got the gunshot wound, the defendant did not respond. Subsequently, following the above related episode concerning his identity, he said that he had been shot in an alley during a crap game but that he did not remember the location of the alley. Throughout the interview, the defendant became increasingly excited, loud and uncooperative, both with the deputy and with those in medical attendance. Ultimately the deputy placed the defendant under arrest for disorderly conduct. She did not question him thereafter; but she did then take possession of his belongings in the basket, including his boots, and a wristwatch from his arm.

The court, over the defendant's timely objections, permitted the deputy to testify as to the foregoing related statements and conduct of the defendant and admitted the shoes and the watch into evidence.

■ The defendant contends that his response to the deputy's questioning were admitted into evidence in violation of *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. These safeguards, however, apply only to custodial interrogation. *Oregon v. Mathiason*, (1977) 429 U.S. 492, 494–5, 97 S.Ct. 711, 713–4, 50 L.Ed.2d 714, 719. *Owens v. State*, (1971) 255 Ind. 693, 266 N.E.2d 612. He asserts that the deputy had placed him in custody at the time she began questioning him; but the record does not bear him out, and the warn-

ings were not required under the circumstances.

*Miranda* warnings are not required prior to general on–the–scene questioning related to obtaining the facts of the crime. *Johnson v. State,* (1978) Ind., 380 N.E.2d 1236, 1240; *Dillon v. State,* (1971) 257 Ind. 412, 418–9, 275 N.E.2d 312, 316.

■ An officer may respond to a radio dispatched description of a suspect by stopping a person fitting that description. He may then request identification from the person without giving *Miranda* warnings. *Cissna v. State,* (1976) Ind.App., 352 N.E.2d 793, 795–6.

An officer may ask routine questions for the purpose of obtaining basic identifying information without giving *Miranda* warnings. *Holt v. State,* (1978) Ind.App., 383 N.E.2d 467, 471, and cases therein cited.

■ The defendant's argument that the court erred in admitting the shoes and wristwatch into evidence is premised upon the claim that his arrest for disorderly conduct was unlawful, as being without probable cause, and that the seizure of the evidence, therefore, was illegal. We are inclined to agree that the defendant's conduct was not violative of the statute proscribing disorderly conduct and that there was no justification to arrest him upon that charge. In fact, the deputy acknowledged that the arrest was a pretext to hold the defendant until it could be determined whether or not he was mentally deranged. However, it is clear that the deputy did have probable cause to arrest the defendant for the robbery offense although it is not clear whether or not she was aware of it.

" * * * Probable cause justifying an arrest without a warrant exists if the facts and circumstances known to the arresting officer would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense." *Barnes v. State,* (1978) Ind., 378 N.E.2d 839, 842.

"We note that a police officer may describe a situation as being one of investigation or suspicion, or he may state that he did or did not believe that he had probable cause. However, this subjective evaluation is not determinative of the issue. The test for probable cause was set out in *Brinegar v. United States,* (1949) 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890, *quoting Carroll v. United States,* (1924) 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, as follows:

" 'Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed [by the person to be arrested.]' "

*Taylor v. State,* (1980) Ind., 406 N.E.2d 247, 249–50.

" * * * the traditional question which arises when police officers effect an arrest without a warrant is whether the officers, at the time they acted, had probable cause to seize. If they did, then public policy in detecting and prosecuting criminal offenders outweighs the value of having the arresting officers choose and enunciate the correct legal theory for the arrest. *Smith v. State* (1971), 256 Ind. 603, 271 N.E.2d 133. Accordingly, a search made incident to an arrest will be upheld if the police had probable cause, in fact, to arrest the person searched. This is true even where the police announce as a reason for the arrest a charge upon which they lack probable cause." *Jenkins v. State,* (1977) Ind.App., 361 N.E.2d 164, 167.

Deputy Shubert knew of the robbery. She knew the general description of the bandit and the type of shoes he had worn. She also knew that those who witnessed the incident believed that he may have received a gunshot wound. The defendant answered to the general description of the bandit. Shoes of the general type worn by the bandit were in his possession and in plain view. He had a gunshot wound of recent origin. When asked to identify himself, the

defendant engaged in furtive conduct[1] by giving identification credentials which were not compatible with his appearance or with each other. He also related an unlikely account of how he received his wound and became increasingly excited and uncooperative as the interview progressed. This information clearly warranted a person of reasonable caution and prudence in believing that the defendant had committed the robbery of the clothing store. An arrest for that offense was, therefore, warranted, and the seizure of the boots and the watch would have been a lawful seizure incident to such arrest. *Chimel v. California*, (1969) 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694; *United States v. Robinson*, (1973) 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 440; *Gustafson v. Florida*, (1973) 414 U.S. 260, 265–66, 94 S.Ct. 488, 492, 38 L.Ed.2d 456, 461; *Grzesiowski v. State*, (1976) 168 Ind.App. 318, 327, 343 N.E.2d 305, 311.

## ISSUE III

■ Defendant contends that the trial court erred in sentencing him upon all three counts of robbery. He asserts that only one robbery occurred, although it had three victims. He relies upon *Williams v. State*, (1979) Ind., 395 N.E.2d 239, where we held that an individual who robs a business establishment and takes that business' money from four employees could be convicted of but one count of robbery. 395 N.E.2d at 248–9.

Defendant's assertion is incorrect. He took the personal funds and wristwatch of Virgil Kellermeyer, a store employee, and the personal funds of Bernard Goldman, the owner. His accomplice took the funds of the clothing store from its custodian, Grace Nooe. Three robberies thus occurred with three victims–Kellermeyer, Goldman and the business establishment. *Williams v. State*, supra, was distinguished in *McKinley v. State*, (1980) Ind., 400 N.E.2d 1378,

wherein we held that the appellant committed two offenses when he took the money of the business establishment, a sole proprietorship, and the personal funds and wristwatch of the proprietor. In accord *Young v. State*, (1980) Ind., 409 N.E.2d 579.

We find no error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.

1. *Barnes v. State*, (1978) Ind., 378 N.E.2d 839, 842 (Defendant found hiding in a closet after police identified themselves, heard movement, and then forced their way into apartment); *Bryant v. State*, (1973) 157 Ind.App. 198, 202–3, 299 N.E.2d 200, 202 (Officer observed Defend-

ant who resembled the suspect, enter taxicab. He followed the cab and stopped it for further investigation when he became increasingly suspicious by reason of the defendant looking out of the rear window several times.).